**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

VINCENT MANI,

                Plaintiff,

v.

XAVIER BECERRA, et al.,

                Defendants.

Civil Action No. 23-cv-02317-LWW

Dated: January 7, 2025

<u>**MEMORANDUM OPINION**</u>

Before the Court is a motion to dismiss or, in the alternative, for summary judgment, filed by Defendant Xavier Becerra, Secretary of the United States Department of Health and Human Services ("Secretary Becerra"), and Defendant United States Department of Health and Human Services ("HHS" or "Agency") (collectively "Defendants"). Mem. of Law in Supp. of Defs.' Mot. to Dismiss or Summ. J. in the Alternative ("Defs.' Mot."), ECF No. 49-1.

This case arises out of an employment dispute. Plaintiff, Dr. Vincent Mani, MBA, Ph.D. ("Plaintiff"), proceeding pro se, brings this action for employment discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e–2000e-17 ("Title VII"), the Americans with Disabilities Act of 1990, as codified, 42 U.S.C. § 12112 ("ADA"), and Maryland state law[1] concerning retaliation and

---

[1] Plaintiff does not note which Maryland state laws under which he brings suit.

Civil Action No. 23-cv-02317-LWW                                      Page 2

discrimination.[2] Compl. at 4. Plaintiff is also appealing a decision of the Merit Systems

Protection Board ("MSPB") affirming Plaintiff's termination by the Agency. Pl.'s Supp.

Compl., Informal Brief, ("MSPB Appeal Br."), ECF No. 41; 5 U.S.C. § 7703(c).

This motion is fully briefed. Having reviewed the submitted materials, this matter

is appropriate for resolution without oral argument. See D. Md. Local R. 105.6. Upon the

memoranda submitted by the parties, and for the reasons set forth below, Defendants'

motion, construed as a motion for summary judgment, is **GRANTED**.

## BACKGROUND

Plaintiff is a public servant with two decades of service in federal and local

governments. Compl. at 9. From 1995 until 2005, Plaintiff worked for the United States

Department of Housing and Urban Development ("HUD"). Id. Plaintiff worked at HUD in

the District of Columbia until 2001, where his pay scale was GS-13. Id. Thereafter,

Plaintiff transferred to HUD's Richmond, Virginia office and took a GS-12, Step-7

position. Id.

From 2014 until 2019, Plaintiff worked for HHS. Id. While at HHS, Plaintiff worked

in its Health Resources and Services Administration Health Center Branch ("HRSA-

HCB"), which handled "administrative, legal, and financial matters related to HRSA

grants." Id. The grants "helped some non-profit hospitals and clinics to operate and

serve rural and low-income areas," and Plaintiff "managed their financial actions." Id.

---

[2] Mindful of his pro se status, the Court construes Plaintiff's claims liberally. See Fed.
Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008).

Plaintiff "approved administrative and financial documents, including budgets, end-of-year financial reviews, and in some cases, withdrawal of funds." Id. Plaintiff managed "between 80-120 grantees in five or six states." Id.

On August 31, 2017, Plaintiff was issued a notice of proposed suspension after his supervisor Sarah Hammond raised concerns about Plaintiff's behavior at a June 22, 2017, meeting. See ECF No. 49, Ex. 1, Part 1 at 248. On October 19, 2017, the deciding official Elvera Messina, Plaintiff's second line-supervisor and Chief, HRSA-HCB, suspended Plaintiff for three days. See ECF No. 49, Ex. 1, Part 2 at 628. Plaintiff initiated contact with the HHS Health Resources and Services Administration Office of Civil Rights, Diversity and Inclusion ("OCRDI") Equal Employment Opportunity ("EEO") counselor on November 27, 2017, 39 days after the suspension notice. ECF No. 49, Ex. 1, Part 1 at 44. On January 29, 2018, Plaintiff subsequently filed a formal EEO complaint. Id. at 39–41.

On March 8, 2018, Plaintiff was issued a feedback and expectations memorandum, which stated that Plaintiff had communicated in an "inappropriate and disrespectful manner" toward a supervisor, "continu[ed] to copy [his] attorney on email responses," and continued to work "outside [his] tour of duty without seeking and securing supervisory approval."[3] ECF No. 49, Ex. 1, Part 2 at 692–95.

---

[3] A "tour of duty" refers to an HHS employee's work schedule. ECF No. 49, Ex. 1, Part 3 at 1145. Employees "are required to complete their work within their individually approved tour of duty." Id.

On April 5, 2018, Plaintiff was issued another notice of proposed suspension for fourteen days, which cited as its reasons: Plaintiff's inappropriate communication relating to his supervisor's feedback and expectations memorandum; Plaintiff's failure to follow instructions to refrain from copying his attorney on work emails; and Plaintiff's failure to refrain from working outside of his tour of duty. Id. at 634–40. On April 19, 2018, through his attorney, Plaintiff responded to the proposed suspension, acknowledging that "the tone of his messages was critical," stating that copying his attorney on work emails "[was] inconsistent with Ms. Hammond's direction," and explaining the reasons for Plaintiff's work outside his tour of duty on three instances in March 2018. ECF No. 49, Ex. 16 at 2–4.

On May 24, 2018, Plaintiff's supervisor Elvera Messina suspended Plaintiff for fourteen days. ECF No. 49, Ex. 1, Part 2 at 680–84. On August 20, 2018, Plaintiff was placed on administrative leave so the Agency could "investigate recently discovered irregularities regarding a grant in [his] portfolio." Id. at 689.

On December 11, 2018, while still on administrative leave, Plaintiff was issued a notice of proposed termination from employment, which cited as its reasons: Plaintiff's failure to follow instructions and Plaintiff's unacceptable performance. See ECF No. 49, Ex. 4.

After receiving the notice of proposed termination from employment, Plaintiff again initiated contact with an EEO Counselor. ECF No. 49, Ex. 27 at 25. On December 21, 2018, Plaintiff's attorney filed a response to the proposal for termination of employment. ECF No. 49, Ex. 22.

On January 23, 2019, Plaintiff filed a second EEO Complaint with OCRDI for discrimination and retaliation by the Agency. ECF No. 49, Ex. 27 at 20. On January 31, 2019, the Agency issued a decision on the proposal for termination of Plaintiff's employment, finding that "the sustained charges and specifications fully warrant [Plaintiff's] removal as proposed." ECF No. 49, Ex. 5 at 191.

The procedural posture of this case is extensive. Plaintiff has filed two separate EEO complaints with OCRDI, an MSPB appeal challenging his termination from the Agency, and the instant action. Plaintiff filed two EEO complaints on January 29, 2018, and January 23, 2019, respectively. ECF No. 49, Ex. 1, Part 1 at 39–41, 54; see also ECF No. 49, Ex. 27 at 19. Plaintiff also filed a separate MSPB appeal challenging the Agency's decision to terminate his employment on June 8, 2019. ECF No. 49, Ex. 28. On November 23, 2019, EEOC Administrative Judge David Norken dismissed Plaintiff's complaint for lack of jurisdiction. ECF No. 49, Ex. 30 at 2.

Plaintiff had a hearing before MSPB Administrative Judge Andrew Niedrick on June 29, 2021. ECF No. 49, Ex. 32 at 2. On September 23, 2021, Judge Niedrick affirmed Plaintiff's termination from the Agency. Id. Plaintiff then appealed Judge Niedrick's decision before the full MSPB. ECF No. 49, Ex. 33 at 1–2. The MSPB denied Plaintiff's petition for review and affirmed Judge Niedrick's decision. Id. at 3.

On February 17, 2023, Plaintiff appealed the MSPB's decision to the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). ECF No. 1, No. 24-

02359.[4] The Federal Circuit issued an order transferring the case to this Court on June 13, 2023. ECF No. 12, No. 24-02359. The Court received the Federal Circuit's order on August 13, 2024. ECF No. 14, No. 24-02359.

In addition to his MSPB appeal, Plaintiff filed a separate action against Secretary Becerra in this Court on August 24, 2023. Compl. On August 30, 2024, the MSPB appeal was consolidated with the instant action. ECF No. 40. Plaintiff filed a supplemental brief addressing his MSPB appeal on the same day. MSPB Appeal Br.

Defendants filed the present consolidated motion to dismiss or, in the alternative, for summary judgment, on October 11, 2024. Defs.' Mot. Plaintiff filed his response on October 17, 2024. Resp. to Mot. to Dismiss or, in the Alternative, for Summ. J. ("Pl.'s Resp. Br."), ECF No. 51. Defendants filed their reply on October 31, 2024. Reply in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Reply"), ECF No. 53.

## LEGAL STANDARD

Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6), or for summary judgment in the alternative under Federal Rule of Civil Procedure 56. Federal Rule of Civil Procedure 12(b)(6) makes dismissal of a complaint proper when there exists no ground upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Pursuant to "Rule 12(b)(6), a motion to dismiss should be granted 'only if it is clear that

---

[4] Plaintiff's MSPB appeal was docketed in the District of Maryland under Case No. 24-02359, which was consolidated with this case, Case No. 23-02317. ECF No. 40. Citations to the record of Case No. 24-02359 will be noted as such.

no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Hepburn v. Nat'l Ctr. on Institutions & Alternatives, Inc., 409 F. Supp. 2d 639, 642 (D. Md. 2006) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 507 (2002)), aff'd sub nom. Hepburn ex rel. Hepburn v. Nat'l Ctr. on Institutions & Alternatives, Inc., 220 F. App'x 216 (4th Cir. 2007). Moreover, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, [and not to] resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Jerry v. Allstate Ins. Co., 553 F. Supp. 3d 287, 291 (D. Md. 2021) (alteration in original) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Matherly v. Andrews, 859 F.3d 264, 279 (4th Cir. 2017). Rule 56(c) makes summary judgment proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rupert v. Geren, 605 F. Supp. 2d 705, 714 (D. Md. 2009) (quoting Fed. R. Civ. P. 56(c)).

The Court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." Masson v. New Yorker Mag. Inc., 501 U.S. 496, 520 (1991). If the movant meets this burden, the burden then shifts to the nonmoving party to identify evidence that demonstrates a genuine dispute of material facts. Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 585–87 (1986). A party will succeed on summary judgment "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991). Courts pay special attention to motions for summary judgment in employment disputes, and "because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958–59 (4th Cir. 1996). Accordingly, the Court will address each of Plaintiff's claims, examining the record taken as a whole and viewing the facts in the light most favorable to him.

A court may treat a motion to dismiss, or summary judgment in the alternative, as a motion for summary judgment if appropriate. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998) (affirming the district court's treatment of a motion to dismiss, or summary judgment in the alternative, as a motion for summary judgment); Smith-Henry v. Kendall, No. CV GLS-23-2154, 2024 WL 4264905, at *6 (D. Md. Sept. 23, 2024) ("When a movant characterizes a motion as a motion to dismiss or alternatively as a summary judgment motion, it implicates the Court's discretion under Rule 12(d)."). Moreover, "[w]hen matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin, 149 F.3d at 260–61 (alteration in original) (quoting Fed. R. Civ. P. 12(b)); see also Dabas v. Brennan, No. CV CCB-17-392, 2018 WL 1300965, at *4 (D. Md. Mar. 13, 2018) ("The administrative record in this case was voluminous. The court will consider the affidavits

and additional materials submitted by the parties and will treat the motion of the

defendant as a motion for summary judgment.").

Given the record in this proceeding, materials submitted by the parties, and

Plaintiff's opportunity to conduct discovery and to develop a factual record, the Court

finds it appropriate to treat Defendants' motion as a motion for summary judgment.

## DISCUSSION

### I.    Plaintiff's Discrimination Claims

A plaintiff may present a discrimination claim under Title VII or the Rehabilitation

Act, as codified, 29 U.S.C. § 791 ("Rehabilitation Act"),[5] via "two avenues of proof": (1)

direct evidence of outright discrimination; or (2) using the McDonnell Douglas

framework. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284–85 (4th Cir.

2004); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Direct evidence of

outright discrimination is "evidence of conduct or statements that reflect the alleged

discriminatory attitude and that bear directly on the contested employment decision."

Walton v. Harker, 33 F.4th 165, 176–77 (4th Cir. 2022). Direct evidence, "'if believed,

would prove the existence of a fact … without any inference or presumptions.'"

O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548 (4th Cir. 1995), rev'd on

other grounds, 517 U.S. 308 (1998) (quoting Bodenheimer v. PPG Indus., Inc., 5 F.3d

955, 958 (5th Cir.1993)). Because direct evidence of outright discrimination is rarely

---

[5] Plaintiff brings his disability discrimination claims under the ADA. However, a plaintiff may raise discrimination claims against a federal agency only through the Rehabilitation Act. Mindful of Plaintiff's pro se status, the Court will construe Plaintiff's ADA claim as a Rehabilitation Act claim, which utilizes the same test.

available for plaintiffs, which Plaintiff here has not provided, plaintiffs may alternatively present a Title VII or Rehabilitation Act claim under the McDonnell Douglas framework. See generally McDonnell Douglas, 411 U.S. 792.

In McDonnell Douglas, "the Supreme Court constructed the elements of the prima facie case to give plaintiffs who lack direct evidence a method for raising an inference of discrimination." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). The framework outlined in McDonnell Douglas is as follows:

> (1) the plaintiff must first establish a prima facie case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse action; (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory.

Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208, 216 (4th Cir. 2016).

Under the first part of the McDonnell Douglas "three-step framework, the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence." Evans, 80 F.3d at 959. The framework "requires the plaintiff to establish a prima facie case of discriminatory action, giving rise to a presumption of discrimination." Jeffers v. Thompson, 264 F. Supp. 2d 314, 324 (D. Md. 2003). The prima facie case under the first part of the McDonnell Douglas framework requires "[i]n general terms … proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination." Ennis v. Nat'l Ass'n of Bus. &

Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995), as amended (June 9, 1995), as amended (Mar. 14, 2008).

### A.    Discrimination Based on National Origin and Religion

Plaintiff's first basis for discrimination concerns the agency's treatment of him on account of his religion and national origin, which falls within the scope of Title VII. Compl. at 4, 5. Plaintiff contends that attacks on him "began in 2017 after the presidential election and during a period of significant hostilities by the federal government against Iranians and Muslims." Id. at 9.

Under Title VII, an employer shall not "'fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin.'" Oladokun v. Grafton Sch., Inc., 182 F. Supp. 2d 483, 489 (D. Md. 2002) (quoting 42 U.S.C. § 2000e-2(a)(1)).

Establishing a prima face case of discrimination based on national origin or religion requires a plaintiff to show "'(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside the protected class.'" Mallik v. Sebelius, 964 F. Supp. 2d 531, 541 (D. Md. 2013) (quoting Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC, Civil Action No. JKB–10–276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011)). A Plaintiff must satisfy every element to meet their prima facie burden. See id.

It is undisputed that Plaintiff is part of a protected class based on his national origin and religion. See generally Defs.' Mot. However, Plaintiff does not meet his prima facie burden in demonstrating the second and fourth elements.

The second element requires a plaintiff to demonstrate satisfactory job performance. See Mallik, 964 F. Supp. 2d at 541. However, "a showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee." Haynes v. Waste Connections, Inc., 922 F.3d 219, 225 (4th Cir. 2019). Instead, "a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations." Id.

Plaintiff cannot demonstrate that he was meeting his employer's legitimate expectations. Plaintiff argues that his HUD tenure from 1999–2005 and HHS tenure from 2014–2019 was successful, and that his accuracy rate at the Agency in 2017 was 92%. Pl.'s Resp. Br. at 4. Plaintiff further contends he had "no significant disagreement" and "a good relationship" with his previous supervisor, Helen Harpold, from 2014–2016. Id. at 5. However, Plaintiff's employment at HUD precedes his tenure at HHS and Plaintiff has shown no connection as to its relevance to the time period at issue, 2017 and 2018.[6] See id.

With respect to the time period at issue, Plaintiff's accuracy rate in 2017 must be considered in light of countervailing evidence that the Agency evaluated Plaintiff's work

---

[6] Evidence on the record also appears to contradict Plaintiff's contentions, as Plaintiff was issued a five-day suspension for "Disregarding a Directive" while at HUD in September of 2004. ECF No. 49, Ex. 4 at 218.

in 2018 and found his performance during that time to be "not usable or reliable." ECF No. 49, Ex. 4 at 219. For example, Plaintiff was placed on leave in August 2018, so the Agency could investigate "discrepancies in the drawdown requests" in his grants portfolio. Id. at 201. After the investigation, Plaintiff was terminated for failure to follow instructions and failure to perform up to Agency standards. See generally id. (a notice of proposed termination from employment listing thirty-one specifications of deficient performance that served as the basis of Plaintiff's termination).

Defendants' specifications describe Plaintiff's failure to seek required supervisory approval for Agency decisions. See id. In its notice of proposed termination, the Agency explained that Plaintiff was "instructed [] via email on January 23, 2018; May 11, 2018; May 14, 2018; May 16, 2018; June 6, 2018; June 26, 2018; and July 31, 2018, to obtain [his supervisor's] concurrence before approving any drawdown requests for recipients on reimbursement drawdown restriction." Id. at 203.

For example:

- On January 23, 2018, Plaintiff failed to receive supervisory approval for a drawdown request from Metropolitan Community Health Services, Inc. ("Metropolitan"), a "high risk recipient[]," but nonetheless "approved the drawdown request … for the amount of $214,053.07." Id. at 203–04 ("Specification 1").

- On March 27, 2018, Plaintiff "approved the drawdown request for PA-00070431 for the period of February 16–28, 2018 for the amount of $48,314.00" without approval. Id. Plaintiff "previously approved a

drawdown request for this period using [fiscal year] 2017 funds," which resulted in a "duplicate payment in the amount of $48,314.00 for the period of February 16–28, 2018." Id. at 204–05 ("Specification 2").

- On September 13, 2018, Plaintiff's supervisor "discovered that the Fiscal Year 2017 information was completely missing from the North Carolina drawdown tracking spreadsheet," which Plaintiff "was instructed to maintain." Id. Plaintiff's spreadsheet "would have shown that [he] had approved draw requests that totaled $2,491,056.95 when [Metropolitan] was only authorized to spend a total of $2,221,577." Id. at 206 ("Specification 5").

In addition, Plaintiff's behavior was deemed "unacceptable" by the Agency during same period that Plaintiff contends his work was satisfactory. Id. at 220. For example, Plaintiff's supervisor emailed him instructions to obtain Metropolitan's drawdown approval on May 14, 2018, and warned that "[f]ailure to follow a direct order is cause for disciplinary action, up to and including removal from federal service." ECF No. 49, Ex. 1, Part 2 at 796. Plaintiff's supervisor also said to him, "the manner in which you are communicating is unacceptable and you are to cease being disrespectful immediately." Id. Plaintiff responded to this message, in part, by saying, "[i]nstead of long emails tell me what you want for personnel drawdown." Id. at 819.

Further evidence in the record describes behavior exhibited by Plaintiff towards his supervisors that caused concern for the Agency. See id. at 500 (HHS Employee Performance Plan Written Narrative explaining that Plaintiff's communication in two

separate meetings was "caus[ing] discord"); id. at 741 (a meeting summary drafted by Plaintiff's supervisor Sarah Hammond after an April 26, 2018, meeting with Plaintiff, where Plaintiff was described as "screaming very loudly," which caused the supervisor to "[shake] throughout the call and after it was over"); id. at 647 (email from Plaintiff responding to a feedback and expectations memorandum, stating in part "[a]s long as you treat me like an uneducated slave, you will not see respect"). An examination of the record demonstrates that Plaintiff failed to meet his employer's legitimate performance expectations and, as such, his claim fails on the second element.

Additionally, Plaintiff has failed to satisfy the fourth element of a prima face case, which requires him to demonstrate that he received less favorable treatment than employees outside the protected class, for two reasons: (1) he does not identify a specific person outside of his protected class; and (2) he does not provide evidence of less favorable treatment. See Mallik, 964 F. Supp. 2d at 541.

First, Plaintiff does not identify a specific person outside of his protected class. Plaintiff contends that he was discriminated against because he was "denied 100% telework when 100% of managers and 98% of the staff were on full-time telework." Pl.'s Resp. Br. at 2. Plaintiff alleges that "management wanted to force [him] to come to work from Charlottesville, Virginia, to Rockville MD (3.5 hours away) twice every two weeks" and that "none of the managers were present in the office." Id. The record shows, however, that at the time that Plaintiff made his request for 100 percent telework, he had moved to a different city, 3.5 hours away from his office location. Pl.'s Resp. Br. at 2. The Agency's policy outline for all employees required Plaintiff to either report to the

office twice per pay period, or to instead take a salary deduction to the salary designated for his new residence location. ECF No. 49, Ex. 1, Part 1 at 339.

Plaintiff does not identify a specific person outside of his protected class that similarly moved to a different duty station location and was able to telework 100 percent of the time without a salary deduction. Further, Plaintiff provides no evidence that another employee made and was granted such request. Plaintiff's assertion that he was treated less favorably than a majority of his office (i.e., "100% of managers and 98% of the staff"), without evidence of a similarly situated comparator is not sufficient. As such, Plaintiff's prima facie burden is not satisfied.

Second, Plaintiff fails to demonstrate less favorable treatment. Contrary to Plaintiff's assertion that he was denied teleworking opportunities, evidence on the record shows that Plaintiff's request for full time telework was approved on October 17, 2017. See ECF No. 49, Ex. 12 at 1, 3. Plaintiff subsequently requested a reasonable accommodation to work outside of his tour of duty, and this request was approved on December 15, 2017. See ECF No. 49, Ex. 1, Part 2 at 711–12. Given the evidence on the record, Plaintiff's claim of negative and differential treatment fails. Thus, summary judgment is proper for Defendants as to Plaintiff's discrimination claim based on his national origin.

Plaintiff also makes claims based on religious discrimination under Title VII. Compl. at 4. Plaintiff asserts that "[w]e are all aware that the Trump administration … was overtly biased against immigrants and especially Iranians and Muslims." Compl. at 16. The law provides two avenues under which plaintiffs may satisfy their prima facie

burden in religious discrimination actions. A plaintiff can make claims under a disparate treatment theory, where "an employee must demonstrate that the employer treated her differently than other employees because of her religious beliefs." Chalmers v. Tulon Co. of Richmond, 101 F.3d 1012, 1017 (4th Cir. 1996). A plaintiff may also bring a religious discrimination claim under an accommodation theory, under which a plaintiff must demonstrate that "(1) she has a bona fide religious belief that conflicts with a job requirement; (2) she informed her employer of this belief; and (3) she was disciplined for failure to comply with the job requirement." Shigley v. Tydings & Rosenberg LLP, 723 F. Supp. 3d 440, 446 (D. Md. 2024).

Plaintiff's claims fail under both theories because he does not present evidence of a religious discrimination claim under Title VII. Plaintiff does not identify evidence that he was treated differently because of his religious beliefs.

Plaintiff's allegations regarding the Trump Administration being "overtly biased against immigrants and especially Iranians and Muslims" is broad, unsupported by evidence appearing in the record, and lacking in factual specificity respecting his own treatment as an employee. Compl. at 8. Plaintiff does not provide evidence establishing a causal connection between the alleged biases of the Trump Administration and Plaintiff's individual treatment at work. As Plaintiff does not provide evidence demonstrating a genuine issue of material fact, he has failed to satisfy his prima facie burden under the McDonnell Douglas framework. Summary judgment for Defendants is therefore proper with respect to Plaintiff's religious discrimination claims.

**B.    Discrimination Based on Disability**

Civil Action No. 23-cv-02317-LWW                                    Page 18

Plaintiff also brings a discrimination claim on the basis of his disabilities, which include obsessive compulsive disorder, anxiety, depression, tinnitus, and autism spectrum disorder.[7] Compl. at 6. Plaintiff brings his disability discrimination claims under the ADA. However, the Rehabilitation Act "is the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination." Sillah v. Burwell, 244 F. Supp. 3d 499, 513 n.12 (D. Md. 2017). Mindful of Plaintiff's pro se status, the Court will construe Plaintiff's ADA claim as a Rehabilitation Act claim, which utilizes the same test. See Works v. Colvin, 519 Fed. Appx. 176, 184 (4th Cir. 2013) ("The analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the Americans with Disabilities Act."); Murray v. Nat'l Institutes of Health, No. 8:21-CV-00390-PX, 2023 WL 2035903, at *4 n.5 (D. Md. Feb. 15, 2023) (construing a pro se plaintiff's ADA claim as a Rehabilitation Act claim).

Plaintiff provides no direct evidence of discrimination based on disability, explaining that "the ever-changing methods and reasons for hostility towards me (behavior, tour of duty, technical issues) suggest that there was no particular reason for their actions, but the goal was my removal." Compl. at 16. Therefore, Plaintiff's

---

[7] Plaintiff's autism spectrum disorder diagnosis cannot serve as the basis for his disability claims because he was diagnosed in 2021, after his termination from the Agency. Pl.'s Resp. Br. at 2; Wonasue v. Univ. of Maryland Alumni Ass'n, 984 F. Supp. 2d 480, 490 (D. Md. 2013) (explaining that "the alleged disability must have existed at the time of the purported discrimination for the discrimination to have been due to the disability").

Rehabilitation Act discrimination claim is analyzed under the McDonnell Douglas framework.[8]

> In discrimination actions related to disability:

> [A] plaintiff must prove by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination.

Ennis, 53 F.3d at 58.

Because the "prima facie case for wrongful discharge is identical to that for Title VII," Plaintiff's disability-based claim fails for the same reason as Plaintiff's Title VII claims. Dones v. Donahoe, 987 F. Supp. 2d 659, 669 (D. Md. 2013) (citing Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Plaintiff's Rehabilitation Act claim fails to satisfy the third element. The third element requires performance of employment duties at a level that has met the employer's legitimate expectations. Ennis, 53 F.3d at 58. As discussed above, Plaintiff failed to demonstrate satisfactory job performance under the second element of the Title VII analysis, and his claim therefore also fails to satisfy the third element of the Rehabilitation Act analysis.

---

[8] The Court is to apply the McDonnell Douglas framework under either the ADA or Rehabilitation Act. See Figueroa v. Geithner, 711 F. Supp. 2d 562, 572 (D. Md. 2010) ("Rehabilitation Act claims are analyzed under the framework, originally formulated for Title VII claims, announced in [McDonnell Douglas]."); Ennis, 53 F.3d at 57 ("To the extent possible, we adjudicate ADA claims in a manner consistent with decisions interpreting the Rehabilitation Act.").

Because Plaintiff has identified no genuine issue of material fact regarding his satisfactory job performance, Plaintiff's claim of disability discrimination fails.

## II.     Plaintiff's Retaliation Claims

Plaintiff brings retaliation claims under Title VII and the Rehabilitation Act.[9] Claims of retaliation under Title VII, like discrimination claims, are analyzed under the McDonnell Douglas framework when, as is the case here, a plaintiff provides no direct evidence of retaliation. See Guessous, 828 F.3d at 216; Smith v. CSRA, 12 F.4th 396, 410 n.4, 416 (4th Cir. 2021) (applying the McDonnell Douglas framework to the plaintiff's Rehabilitation Act claims).

Plaintiff claims he was retaliated against for his EEO activity. Compl. at 10; Pl.'s Resp. Br. at 2, 6, 7, 14. Defendants respond that Plaintiff was not retaliated against because he was subjected to "common managerial actions and decisions," and move for summary judgment on this issue. Defs.' Mot. at 2, 22.

To satisfy the prima facie burden of retaliation under Title VII, "a plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took 'materially'

---

[9] Similar to Plaintiff's discrimination claim, mindful of his pro se status, the Court construes Plaintiff's ADA retaliation claim as a retaliation claim under the Rehabilitation Act. See Murray, 2023 WL 2035903, at *4 n.5. The Court does not address Plaintiff's retaliation claim under the Rehabilitation Act because if "'the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled.'" Leckie v. Bd. of Educ. of Montgomery Cnty., No. CV TDC-23-0299, 2023 WL 8809310, at *8 (D. Md. Dec. 19, 2023) (quoting Floyd v. Lee, 968 F. Supp. 2d 308, 334 (D.D.C. 2013)). Because the Court considers Plaintiff's failure to accommodate claim in the next section, it does not address Plaintiff's retaliation claim under the Rehabilitation Act here.

adverse action against her and (3) that a causal connection existed between the activity and the adverse action." Goodman v. Archbishop Curley High Sch., Inc., 149 F. Supp. 3d 577, 582 (D. Md. 2016) (citing Cepada v. Bd. of Educ. of Baltimore Cnty., 814 F. Supp. 2d 500, 514 (D. Md. 2011)); see also Brady v. Bd. of Educ. of Prince George's Cnty., 222 F. Supp. 3d 459, 474 (D. Md. 2016), aff'd, 707 F. App'x 780 (4th Cir. 2018) (setting out the same test for retaliation claims under the Rehabilitation Act).

With respect to the first element, the "[p]rotected activity of an employee … can take the form of … making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing." Pitter v. Cmty. Imaging Partners, Inc., 735 F. Supp. 2d 379, 395 (D. Md. 2010). With respect to the second element, an adverse action "is one that 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Hoyle v. Freightliner, LLC, 650 F.3d 321, 337 (4th Cir. 2011) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998)).

It is undisputed that Plaintiff engaged in a protected activity (i.e., engaging an EEO counselor or filing an EEO complaint). Additionally, a materially adverse action was taken against Plaintiff when he was fired. The remaining issue is whether the Plaintiff has satisfied his prima facie burden respecting the third element: that a causal connection exists between his protected activity and his firing.

To establish the third element of their prima facie case, a plaintiff "must establish a causal connection between the adverse action and the protected activity." Brady, 222

F. Supp. 3d at 474. The adverse employment action must have been taken by the employer "because the plaintiff engaged in protected activity." Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original). Temporal proximity alone is insufficient. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 126 (4th Cir. 2021) (requiring "sufficient temporal proximity … along with the existence of other facts"). Additionally, a plaintiff must demonstrate that a "decisionmaker imposing the adverse action [has] actual knowledge of the protected activity." Id. at 125. A plaintiff's burden "requires 'more evidence than mere curious timing coupled with speculative theories' about 'discussions between a decisionmaker and someone with knowledge of the plaintiff's protected activity' that 'create[] only a speculative inference regarding the decisionmaker's awareness.'" Id. at 126. (alteration in original) (quoting Equal Emp. Opportunity Comm'n v. EmCare, Inc., 857 F.3d 678, 683 (5th Cir. 2017)).

Plaintiff's claim fails to satisfy the third element because he does not demonstrate that a causal connection exists between his EEO activity and the adverse action. See Goodman, 149 F. Supp. 3d at 582. Plaintiff alleges that after he filed his "second EEOC complaint about the 14-day suspension, Ms. Hammond and Ms. Messina retaliated by giving [him] six months suspension and cutting [his] access to emails and records, and at the end of the six months, they fired [him]." Compl. at 10. To the contrary, evidence in the record demonstrates that Defendants terminated Plaintiff's employment for "failure to follow instructions" and "unacceptable performance." See ECF No. 49, Ex. 4 at 201; ECF No. 49, Ex. 5 at 191; see also Abraham v. Burwell, No.

CV-15-1815, 2016 WL 6462072, at *4 (D. Md. Oct. 31, 2016) (explaining that "the record reflects that Plaintiff was suspended not because she filed EEO complaints, but, rather, because she engaged in inappropriate conduct at work, which the Final Agency Decision documents in significant detail").

Further demonstrating that his termination is not causally connected by temporal proximity or decision-maker knowledge is the undisputed evidence in the record that Plaintiff was first suspended from his employment for performance issues that began prior to his initiation of contact with the EEO counselor. See generally ECF No. 49, Ex. 4. The Agency first raised performance and behavioral issues with Plaintiff in its notice of proposed five-day suspension on August 31, 2017, which is before his first contact with an EEO counselor on November 27, 2017, or his January 29, 2018, EEO complaint. See ECF No. 49, Ex. 1, Part 1 at 41, 58, 92, 248; see also Rupert, 605 F. Supp. 2d at 715.

While engaging in EEO activity is protected, "it must be noted that filing an EEO complaint does not shield an [employee] from having an adverse action taken against her." Abraham, 2016 WL 6462072, at *4 (alteration in original). Additionally, "[i]t is well established that 'employers retain...the right to discipline or terminate employees for any legitimate, nondiscriminatory reason.'" Id. (alteration in original) (citing McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015)). Plaintiff's retaliation claim fails at the third element because he did not demonstrate that actions taken against him were the result of his EEO activity. See Guerrero v. Lynch,

621 F. App'x 755, 756 (4th Cir. 2015) ("An employee is not shielded from discipline merely by engaging in protected activity under Title VII.").

## III.    Plaintiff's Failure to Accommodate Claims

Plaintiff claims that Defendants failed to accommodate his disabilities, namely, autism spectrum disorder, tinnitus, depression, anxiety disorder, obsessive compulsive disorder, and social pragmatic communication disorder. Pl.'s Resp. Br. at 2. Defendants claim that Plaintiff cannot establish Defendants' failure to accommodate his disabilities. Defs.' Mot. at 34–35. In support of their position, Defendants contend that Plaintiff's request for reassignment was an accommodation of last resort that he was not entitled to. Id. at 35. Defendants also contend that Plaintiff cannot establish that there existed "vacant, funded positions whose essential functions he could perform." Id.

The Rehabilitation Act prohibits discrimination on the basis of an employee's disability. 29 U.S.C. § 791. The Rehabilitation Act and the ADA are evaluated under the same standard. Id. § 791(f) ("The standards used to determine whether this section has been violated in a complaint alleging nonaffirmative action employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.).").

For a plaintiff to establish the prima facie case of failure to accommodate, a plaintiff must demonstrate:

> "(1) that she was an individual with a disability within the meaning of the statute; (2) that the employer had notice of her disability; (3) that with reasonable accommodation she could perform the essential functions of the position; (4) that the employer refused to make such accommodations."

Smith, 12 F.4th at 414 (quoting Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 579 (4th Cir. 2015)).[10]

Plaintiff's claim fails to satisfy the fourth element because he does not provide evidence that Defendants refused to make a reasonable accommodation. Plaintiff was provided with three accommodations. On September 7, 2017, Plaintiff made an accommodation request for full-time telework to HRSA's Reasonable Accommodations Team. ECF No. 49, Ex. 9 at 1. On September 27, 2017, Plaintiff supplemented his request with letters from two physicians supporting his need "to limit long distance or high stress driving" and stating his diagnosis for tinnitus. ECF No. 49, Ex. 10 at 3, 4. On October 17, 2017, Plaintiff was informed by OCRDI's accessibility team that his request for full-time telework was approved and he was presented with a draft agreement setting forth such accommodation. ECF No. 49, Ex. 12 at 1–4. Plaintiff responded via email on October 20, 2017, that he "agree[d] with this document." Id. at 1.

On October 11 and again on October 17, 2017, Plaintiff's supervisor Sarah Hammond emailed him to explain that he was not authorized to work outside of his tour of duty, and that "[f]ailure to follow [her] instructions could result in discipline." ECF No.

---

[10] A plaintiff can also establish the prima facie case as to a failure to accommodate under the ADA by demonstrating "'(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position ...; and (4) that the [employer] refused to make such accommodations.'" Wilson v. Dollar Gen. Corp., 717 F.3d 337, 345 (4th Cir. 2013) (alteration in original) (quoting Rhoads, 257 F.3d at 387 n.11). The relevant tests under the ADA and the Rehabilitation Act are identical. The Court will construe Plaintiff's ADA claims as Rehabilitation Act claims.

49, Ex. 13 at 1; ECF No. 49, Ex. 14 at 2. In an email dated October 23, 2017, Plaintiff's

supervisor asked Plaintiff if he was requesting "another type of work schedule," and

provided Plaintiff with an "Alternative Work Schedule link and form for [his] review and

completion." ECF No. 49, Ex. 14 at 1. On November 2, 2017, Plaintiff, through his

attorney, requested "immediate" or "interim" transfer to another position due to "new

complaints by Ms. Hammond regarding work performed outside of normal business

hours." ECF No. 49, Ex. 15 at 8. On December 15, 2017, Plaintiff was issued a new

accommodation providing him with "Flexi-time (flexible arrivals and departures)." ECF

No. 49, Ex. 1, Part 2 at 712. Plaintiff's request for reassignment "was denied, as

accommodations were available to enable [him] to perform the essential functions of

[his] position." Id.

On March 8, 2018, Plaintiff was issued a feedback and expectations

memorandum. Id. at 692–95. On March 15, 2018, Plaintiff made another

accommodation request for reassignment. Id. at 717. On April 18, 2018, OCRDI

determined that Plaintiff's reassignment request "did not meet the requisite criteria," but

that the Agency was "obligated to seek accommodations, which would allow [Plaintiff] to

perform the essential functions of [his] position." Id. at 717, 721. In lieu of reassignment,

Plaintiff was approved for a compressed work schedule "with the ability to work 2 hours

on Saturdays between 6:00 AM and 12:00 PM." Id. at 717.

On July 3, 2018, Plaintiff again requested reassignment, which was denied on

September 17, 2018. ECF No. 49, Ex. 17 at 1. The Agency's HRSA Reasonable

Accommodations team explained that it conducted a search of vacant positions within

Plaintiff's selected search criteria but did not find available positions. Id. Plaintiff limited the search to jobs "around Richmond Virginia metro area or Charlottesville VA metro area" and was not willing to accept a position "outside of [his] current job series" or "below [his] current grade." Id. No vacancies were found, and as such, "HRSA's efforts to reassign [Plaintiff] to a different position as part of the RA process were not successful." Id. at 2. In an affidavit made pursuant to his 2018 EEO Complaint, ECF No. 49, Ex. 1, Part 1 at 139–41, Plaintiff identified seven positions for which he was qualified. ECF No. 49, Ex. 1, Part 1 at 139; see also ECF No. 49, Ex. 34 (USAJOBS Vacancy Announcements listing the positions Plaintiff contends he was qualified for).

However, a plaintiff is not entitled to their choice of accommodation, and an employer is not obligated to grant the preferred accommodation of the employee "so long as [the selected accommodation] is sufficient to meet the job-related needs of the individual being accommodated." Corrigan v. Perry, 139 F.3d 888, at *9 (4th Cir. 1998). Plaintiff was issued three reasonable accommodations, and the fact that Plaintiff's request for reassignment was not approved does not amount to a failure to provide a reasonable accommodation. Elledge v. Lowe's Home Centers, LLC, 979 F.3d 1004, 1014 (4th Cir. 2020) (noting that reassignment under EEOC standards is an accommodation of "last resort").

Plaintiff states that the "Office of Reasonable Accommodation helped [him] considerably, but they could not do anything concerning [his] reassignment request." Pl.'s Resp. Br. at 11. Plaintiff contends his reassignment request was not approved because "someone had stopped their efforts." Id. Plaintiff claims that, "in general they

were always helpful, until one of their staff told [him] [he] should not contact them anymore." Id. However, Plaintiff does not provide evidence that the Agency interfered or unreasonably refused his requests for reassignment with the Office of Reasonable Accommodation, given that Plaintiff's requests for a reasonable accommodation were approved on multiple occasions, including requests for "[f]lexi-place (telework) on a full-time basis," "[f]lexi-time (flexible arrivals and departures)," and a compressed work schedule. See ECF No. 49, Ex. 12 at 3; ECF No. 49, Ex. 1, Part 2 at 712, 717.

The record reflects that Plaintiff was given three separate reasonable accommodations to allow him to perform the essential functions of his existing position. See ECF No. 49, Ex. 12 at 3; ECF No. 49, Ex. 1, Part 2 at 712, 717. The record does not support Plaintiff's contention that Defendants failed to offer him reasonable accommodations, and therefore Plaintiff fails to satisfy his prima facie burden on his failure to accommodate claims under the Rehabilitation Act.

## IV.    Plaintiff's Hostile Work Environment Claims

Under Title VII and the Rehabilitation Act, absent direct evidence of a hostile work environment, as is the case here, a plaintiff must make claims under the McDonnell Douglas framework.[11] Foster v. Univ. of Maryland-E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). Under the McDonnell Douglas framework for a Title VII hostile work

---

[11] Direct evidence includes "conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Onuoha v. Grafton Sch., Inc., 182 F. Supp. 2d 473, 480, 483 (D. Md. 2002). Plaintiff does not provide direct evidence of a hostile work environment. See generally Compl.; Pl.'s Resp. Br.

environment claim, plaintiffs must satisfy their prima facie burden by alleging: "'(1)
unwelcome conduct; (2) that is based on the plaintiff's ... race[, color, sex, religion, or
protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's
conditions of employment and to create an abusive work environment; and (4) which is
imputable to the employer.'" Grady v. McCarthy, No. CV ELH-17-1141, 2018 WL
3105769, at *22 (D. Md. June 22, 2018) (alteration in original) (quoting Boyer-Liberto v.
Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015)). Similarly, to satisfy a hostile
work environment claim under the Rehabilitation Act, "a claimant must demonstrate that
the alleged conduct: 1) was unwelcome; 2) resulted because of her... disability...; 3) was
'sufficiently severe or pervasive' to alter the conditions of her employment; and 4) was
imputable to her employer." Brady, 222 F. Supp. 3d at 471–72 (alteration in original)
(quoting Pueschel v. Peters, 577 F.3d 558, 564–65 (4th Cir. 2009)), aff'd, 707 F. App'x
780 (4th Cir. 2018). While the first element for both Title VII and the Rehabilitation Act
claims, unwelcome conduct, "is subjective, the rest of the test is made up of objective
components based on a 'reasonable person' standard." Pueschel, 577 F.3d at 565.

    With respect to the first element, Plaintiff alleges that he was subjected to
unwelcome conduct because Defendants suspended him, placed him on administrative
leave, and refused his accommodation requests to be reassigned. Pl.'s Resp. Br. at 2–
3.

    With respect to the second element, Plaintiff does not provide evidence that the
conduct of the Defendants was based on his religion, national origin, or disabilities. The
record demonstrates that the disciplinary actions taken against Plaintiff (e.g., a three-

day suspension from employment, a fourteen-day suspension from employment, paid

administrative leave, and proposal of termination from service), were predicated on

"unacceptable performance" and "failure to follow instructions." ECF No. 49, Ex. 4 at

201, 219. There is no evidence that the disciplinary action taken by Defendants was

based on Plaintiff's national origin, religion, or disability. Regarding his disabilities, which

Plaintiff made known, Plaintiff's reasonable accommodation requests were approved on

three different occasions. See ECF No. 49, Ex. 12 at 3; see also ECF No. 49, Ex. 1,

Part 2 at 712, 717. Therefore, Plaintiff has not met his burden in showing that his

national origin, religion, or disability served as the basis for unwelcome conduct.

Plaintiff also fails to satisfy the third element of his hostile work environment

claims, that the unwelcome conduct complained of was sufficiently severe or pervasive

to alter the conditions of Plaintiff's employment. In determining whether unwelcome

workplace conduct is sufficiently severe or pervasive to alter the conditions of

employment, courts consider a number of factors including "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or

a mere offensive utterance; and whether it unreasonably interferes with an employee's

performance." Rock v. McHugh, 819 F. Supp. 2d 456, 471 (D. Md. 2011) (quoting Fox v.

Gen. Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001)).

The discriminatory actions alleged by Plaintiff include his suspensions, his being

placed on administrative leave, and the refusal of his accommodation requests to be

reassigned, occurred over several years in the ordinary course of employment. Plaintiff

does not present evidence of physically threatening, humiliating, or offensive behavior

by his supervisors. Nor does Plaintiff present evidence that any action by his supervisor interfered with his performance. To the contrary, Plaintiff's proffered evidence shows that the Agency provided Plaintiff opportunities to remediate his performance and behavior. For example, Plaintiff's supervisor emailed him on May 14, 2018, stating "the manner in which you are communicating is unacceptable and you are to cease being disrespectful immediately," and warning that "[f]ailure to follow a direct order is cause for disciplinary action, up to and including removal from federal service." ECF No. 49, Ex. 1, Part 2 at 796. This does not qualify as an "objectively hostile" interaction. Onuoha, 182 F. Supp. 2d at 482 (explaining that alleged conduct must "create an objectively hostile" work environment).

There is no evidence in the record of interactions between Plaintiff and his supervisors which indicate objectively hostile, humiliating, or threatening conduct, or conduct that interfered with his performance. Plaintiff's suspensions and administrative leave do not qualify as such conduct because Plaintiff's supervisors presented legitimate employment reasons for each disciplinary employment action.

The bar for "proving an abusive work environment is intended to be a very high one because the standard is designed to filter out complaints attacking 'the ordinary tribulations of the workplace.'" Rock, 819 F. Supp. 2d at 471 (quoting Wang v. Metro. Life Ins. Co., 334 F. Supp. 2d 853, 864 (D. Md. 2004)). Accordingly, Plaintiff does not satisfy his prima facie burden of demonstrating a hostile work environment on his Title VII and Rehabilitation Act claims.

**V.      Plaintiff's State Law Claims**

Plaintiff also brings claims under Maryland state law alleging "discrimination, retaliation based on disability, national origin, religion."[12] Compl. at 4.

The Maryland Fair Employment Practices Act ("MFEPA") "'is the state law analogue to Title VII.'" Jennings v. Frostburg State Univ., 679 F. Supp. 3d 240, 274 (D. Md. 2023) (quoting Alexander v. Marriott Int'l, Inc., RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011)). Additionally, "[a] claim under MFEPA is also analyzed under the McDonnell Douglas burden-shifting framework, in line with claims under Title VII." Id. at 275. The MFEPA is also the state law analogous to the Rehabilitation Act. Ott v. Maryland Dep't of Pub. Safety & Corr. Servs., 909 F.3d 655, 658–59 (4th Cir. 2018) ("We now find that the amended MFEPA qualifies as the most analogous Maryland law to the Rehabilitation Act.").

Because Plaintiff's Rehabilitation Act and Title VII claims fail to satisfy the elements set forth under the McDonnell Douglas burden-shifting framework, Plaintiff's claims also fail under the MFEPA. See, e.g., Copes v. Johns Hopkins Univ. Applied Physics Lab'y, LLC, No. CV RDB-23-2306, 2024 WL 3424041, at *4 (D. Md. July 16, 2024) ("Plaintiff fails to state a claim for race discrimination under Title VII, and he therefore also fails to do so under MFEPA.").

---

[12] Plaintiff does not note under which Maryland state laws he asserts his claims.

## VI.    Plaintiff's MSPB Appeal

Plaintiff also appeals the MSPB's decision to affirm his termination from the

Agency.[13] See MSPB Appeal Br. Plaintiff contends that the MSPB failed to take facts

into account, failed to apply the correct law, failed to consider important grounds for

relief, and that Judge Niedrick acted with bias toward Plaintiff during the MSPB hearing.

Id. at 2–3. Defendants contend that "the MSPB properly determined that the Agency

proved the two charges of misconduct at issue in Plaintiff's removal and that Plaintiff's

removal was warranted and reasonable, and [Judge Niedrick's decision] was based on

substantial evidence." Defs.' Mot. at 37.

In his decision, Judge Niedrick ruled that: (1) the Agency proved the alleged

misconduct by a preponderance of the evidence; (2) Plaintiff failed to prove that his

termination was the product of discrimination based on national origin or religion, or in

retaliation for his prior EEO activity or his request for accommodation; (3) Plaintiff failed

to prove that his termination was the product of discrimination based on his disabilities

or the Agency's failure to accommodate his disabilities; (4) the Agency proved that there

was a nexus between the alleged misconduct and the efficiency of the service; and (5)

---

[13] The MSPB "is an independent, quasi-judicial agency of the Executive branch which adjudicates employment disputes." Williams v. U.S. Merit Sys. Prot. Bd., 15 F.3d 46, 48 n.7 (4th Cir. 1994). Federal employees who are "subjected to an adverse personnel action such as a discharge or demotion may appeal [their] agency's decision to the Merit Systems Protection Board." Kloeckner v. Solis, 568 U.S. 41, 43 (2012) (citing 5 U.S.C. §§ 7512, 7701).

Civil Action No. 23-cv-02317-LWW                                    Page 34

the penalty of removal did not exceed the tolerable limits of reasonableness. See ECF No. 49, Ex. 32 at 6, 40, 43, 46, 48.

Subsequently, Plaintiff appealed Judge Niedrick's decision to the MSPB board. See ECF No. 49, Ex. 33. The MSPB (1) "[found] no evidence in the record to suggest that the administrative judge exhibited any antagonism towards [Plaintiff]"; and (2) found that Judge Niedrick's findings were "well reasoned, supported by the record, and in accordance with the law." Id. at 3.

The issue is whether the MSPB's decision was supported by substantial evidence.

The MSPB "has the power to determine questions of fact and law in the first instance," or it "may refer cases to an administrative judge to make an initial decision." Haebe v. Dep't of Just., 288 F.3d 1288, 1298–99 (Fed. Cir. 2002). The initial "decision becomes final if a petition for review is denied."[14] Connolly v. U.S. Dep't of Just., 766 F.2d 507, 512 (Fed. Cir. 1985).

District courts review determinations of the MSPB involving Title VII discrimination claims de novo, but the MSPB's determinations involving nondiscrimination claims are reviewed under an "arbitrary and capricious" standard. Monk v. Potter, 723 F. Supp. 2d 860, 872 (E.D. Va. 2010) (quoting 5 U.S.C. § 7703(c)),

---

[14] Because Judge Niedrick's decision became the final decision of the MSPB after it denied Plaintiff's petition for review, the Court will review the MSPB's determination in the context of Judge Niedrick's ruling. Connolly, 766 F.2d at 512.

aff'd sub nom. Monk v. Donahoe, 407 F. App'x 675 (4th Cir. 2011).[15] As discussed

above, Plaintiff's discrimination and retaliation claims under Title VII and the

Rehabilitation Act fail. Thus, the only issues remaining on this appeal concern Plaintiff's

nondiscrimination claims.

 A court "must affirm the MSPB decision unless the Court finds the decision to be

'(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

law; (2) obtained without procedures required by law, rule, or regulation having been

followed; or (3) unsupported by substantial evidence.'" Hooven-Lewis v. Caldera, 249

F.3d 259, 266 (4th Cir. 2001) (quoting 5 U.S.C. § 7703(c)). "Substantial evidence"

includes "'such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion.'" Rupert, 605 F. Supp. 2d at 713 (quoting Frederick v. Dep't of

Just., 73 F.3d 349, 352 (Fed. Cir. 1996)).

 The arbitrary and capricious standard is "highly deferential." Mid Continent Nail

Corp. v. United States, 846 F.3d 1364, 1372 (Fed. Cir. 2017). Because the MSPB is

entitled to "considerable deference" in its determinations, the Court's role is not "to

substitute its own judgment in the matter unless the action is unreasonable or clearly

unlawful." Bennett v. Dep't of Navy, 699 F.2d 1140, 1146 (Fed. Cir. 1983). The question

is not whether courts would rule differently "upon a de novo appraisal of the facts of the

---

[15] The Federal Circuit ordinarily conducts judicial review of MSPB decisions. Rupert,
605 F. Supp. 2d at 713. However, MSPB appeals must be heard in the appropriate
district court when they involve "both nondiscrimination claims and Title VII
discrimination claims." Id.; see also Perry v. Merit Sys. Prot. Bd., 582 U.S. 420, 422
(2017).

case, but whether the administrative determination is supported by substantial evidence in the record as a whole." Haebe, 288 F.3d at 1298.

The MSPB "abuses its discretion when 'the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represents an unreasonable judgment in weighing relevant factors.'" Tartaglia v. Dep't of Veterans Affs., 858 F.3d 1405, 1408 (Fed. Cir. 2017) (quoting Gose v. U.S. Postal Serv., 451 F.3d 831, 836 (Fed. Cir. 2006)). Plaintiffs bear the burden of "prov[ing] arbitrariness or capriciousness, procedural impropriety, or lack of substantial evidence." Rupert, 605 F. Supp. 2d at 713. When reviewing the determinations of administrative judges, the Fourth Circuit has held that "district courts may rely on regularly made factual findings without further justification or explanation. Explanation is required for departing from such findings, not relying upon them." G.M. by E.P. v. Barnes, 114 F.4th 323, 340 (4th Cir. 2024) (emphasis in original).

First, Plaintiff contends that Judge Niedrick excluded his witnesses and evidence, failed to consider his arguments, and acted antagonistically against him. MSPB Appeal Br. at 2. Procedural decisions "relative to discovery and evidentiary issues fall within the sound discretion of the board and its officials." Curtin v. Off. of Pers. Mgmt., 846 F.2d 1373, 1378 (Fed. Cir. 1988). Courts "will not overturn the [MSPB] on such matters unless an abuse of discretion is clear and is harmful." Id. Moreover, "[a] determination to allow or exclude witness testimony is within the sound discretion of the administrative judge." Guise v. Dep't of Just., 330 F.3d 1376, 1379 (Fed. Cir. 2003). Plaintiff does not satisfy his burden of demonstrating that Judge Niedrick's procedural actions constitute a

clear and harmful abuse of discretion. For example, the record demonstrates that Judge Niedrick considered Plaintiff's concerns in determining the length of the hearing. Plaintiff presented his case over the course of one day and Judge Niedrick agreed to his request to "go on until six and … decide [if we need more time] then." ECF No. 49, Ex. 21 at Tr. p. 256. There is no evidence that the length of the hearing was outside of the bounds of proper procedure.

Plaintiff additionally claims that Judge Niedrick was biased against him and "acted as the government's fourth attorney" at the hearing. MSPB Appeal Br. at 2. However, claims of bias based "on rulings and statements made by the [administrative judge] during the courts of the proceedings … do not normally provide grounds for a claim of bias." Richards v. Fed. Deposit Ins. Corp., 125 F. App'x 303, 304 (Fed. Cir. 2005). The same goes for Plaintiff's claims that his witnesses, arguments, and documents were excluded. The record demonstrates that Judge Niedrick developed a factual record and made findings pursuant to that record. ECF No. 49, Ex. 21 at Tr. p. 8; ECF No. 49, Ex. 33 at 33, 40, 42, 45, 46, 47, 49. There is no evidence that Judge Niedrick abused his discretion, showed improper bias, or acted antagonistically. As such, Judge Niedrick did not commit a clear and harmful abuse of discretion in conducting the hearing.

Second, Plaintiff contends that Judge Niedrick's decision to affirm his termination from the Agency was not supported by substantial evidence because Judge Niedrick failed to consider important facts such as Plaintiff's past performance from 2014–2017 or his disability. MSPB Appeal Br. at 2. However, the Agency's termination was based

on Plaintiff's "past performance year" of 2018. ECF No. 49, Ex. 32 at 34. Moreover,

record evidence shows that Judge Niedrick considered Plaintiff's disabilities, finding that

Plaintiff "failed to show that his disabilities were a motivating factor" in his termination

after hearing the testimony of Plaintiff's supervisors. Id. at 45. Findings based on

credibility determinations must be upheld "unless no reasonable trier of fact could have,

on the evidence adduced, reached the conclusion advanced by the ALJ or the MSPB."

Walker v. Dep't of Health & Hum. Servs., No. CIV. H-92-461, 1992 WL 511414, at *5 (D.

Md. Oct. 30, 1992), aff'd sub nom. Walker v. U.S. Dep't of Health & Hum. Servs., 995

F.2d 1065 (4th Cir. 1993). Because "the credibility determinations of an administrative

judge are virtually unreviewable on appeal," the Court gives deference to the

administrative judge's fact-finding and decision-making. Bieber v. Dep't of Army, 287

F.3d 1358, 1364 (Fed. Cir. 2002).

Plaintiff does not satisfy his burden of demonstrating that Judge Niedrick's

credibility determinations in making his decision were arbitrary and capricious. In

making his decision to sustain both of the Agency's justifications for Plaintiff's

termination for "failure to follow instructions" and "unacceptable performance," Judge

Niedrick found the testimony of Plaintiff's former supervisors, Sarah Hammond and

Elvera Messina, to be credible. ECF No. 49, Ex. 32 at 29 n.19, 30 n.23, 39. With respect

to the first basis for termination, Judge Niedrick highlighted the "additional context and

detail" Sarah Hammond provided to "support the Charges and Specifications," including

"documentary evidence and demonstrative exhibits." Id. at 27.

With respect to the second basis for termination, Judge Niedrick relied on specific examples of performance deficiencies outlined in the notice of proposed termination. Id. at 34–38. Judge Niedrick also found that Plaintiff's testimony was "difficult to follow" and that he "made statements and claims that did not appear to be relevant to any of the material issues in this case." Id. at 31 n.24. Judge Niedrick also noted that Plaintiff's "prehearing submissions were disorganized and difficult to decipher." Id. at 31 n.26. The record makes clear that Judge Niedrick considered the evidence before him and that his conclusions are those of a reasonable trier of fact. Therefore, it is not proper for the Court to overturn Judge Niedrick's findings or credibility determinations.

Finally, Plaintiff contends that Judge Niedrick applied the wrong law. Pl.'s Resp. Br. at 2. However, Plaintiff does not provide an explanation of which law was wrongfully applied or which alternative law would have been properly applied instead, and this does not constitute a reason to disturb the MSPB's decision. See MSPB Appeal Br.

In light of the foregoing, the record demonstrates that Judge Niedrick's ruling affirming the Agency's termination was supported by substantial evidence. Miguel v. Dep't of the Army, 727 F.2d 1081, 1083 (Fed. Cir. 1984). Judge Niedrick's decision to sustain Plaintiff's termination was supported by substantial evidence and was not arbitrary, capricious, or an abuse of discretion.

## VII.    Plaintiff's Time-Barred Claims

Defendants argue that Plaintiff's claims 1, 2, 3, 4, 5, 7, and 8 are time-barred because Plaintiff did not initiate contact with an EEO counselor within forty-five days of

the date of the alleged discriminatory actions as required by 29 C.F.R. § 1614.105(a)(1).

Defs.' Mot. at 21. The Court considers this issue as moot because all of Plaintiff's claims

fail on other, substantive grounds as explained in the foregoing analysis.

## CONCLUSION

For reasons discussed herein, Defendants' motion to dismiss, or in the

alternative, for summary judgment, construed as a motion for summary judgment, is

**GRANTED**. A separate order shall follow.

/s/ Lisa W. Wang
Judge

Dated: January 7, 2025
       Greenbelt, MD